IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-1921

ARETHA FRANKLIN,

        Plaintiff,

v.

NATIONAL FILM PRESERVE,
LTD. A/K/A THE TELLURIDE FILM FESTIVAL

        Defendants.

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF

## FORTHWITH HEARING REQUESTED

### I. GENERAL ALLEGATIONS

1.    This is a lawsuit brought against the Telluride Film Festival (Defendant National Film Preserve, Ltd.) by the international recording artist Aretha Franklin to stop the unauthorized public commercial release of a documentary film made of Ms. Franklin's 1972 concert performance at the New Missionary Baptist Church in Los Angeles, California.  Ms. Franklin has never given permission for the use of this footage in any commercial context and has not authorized the public release of the footage.  The footage was taken with the express understanding that it would not be used commercially without agreement and consent by Ms. Franklin.

2.      Ms. Franklin just learned that on Friday, September 4, 2015 the Telluride Film Festival purports to be showing a full-length film, titled "Amazing Grace" produced by California resident Alan Elliott, that consists almost entirely of this concert footage.  *See* **Exhibit 1** (Telluride Film Festival Brochure).

3.      Allowing the film to be shown violates Ms. Franklin's contractual rights, her intellectual property rights, her rights to use and control her name and likeness, and represents an invasion of her privacy.  It is also in direct and specific violation of the quitclaim agreement by which the footage was obtained from the Warner Brothers organization by Mr. Alan Elliott, the purported producer of "Amazing Grace:"

4.      The quitclaim deed for the Aretha Franklin gave explicit warning to Mr. Elliott that any commercial use of the footage would require the permission of Ms. Franklin:

> "Assignee represents, warrant and agrees that in connection with Assignee's use of the Material, Assignee will obtain all other authorizations, consents and releases and pay all re-use fees and other compensation required by applicable collective bargaining or individual contracts or otherwise required by law. Assignee specifically understands that Assignee will need to obtain authorization from Aretha Franklin.  Without limiting the foregoing, with respect to any music included in the Material as exhibited, Assignee will obtain all necessary music synchronization and performance rights (particularly from Ms. Franklin) from the copyright proprietors of such music and such other persons or entities . . . ."

"Aretha Franklin Concert Footage (1972)" Quitclaim agreement of December 11, 2007 between Warner Brothers Pictures and Alan Elliott.  **Exh. 2** (quitclaim agreement).

5.      Ms. Franklin has never given her consent or permission for this footage to be publicly released.  *See* **Exhibit 3** (Declaration of Ms. Franklin).

6. The album produced from the concert is the best-selling album of Ms. Franklin's fifty-year musical career. The album went "double platinum." Ms. Franklin (along with others) holds a copyright to this album.

7. The concert was filmed with Ms. Franklin's permission with the understanding and agreement that it would not be publicly or commercially released without the consent of Ms. Franklin.

8. More than 80 percent of the footage of this film is images of Ms. Franklin and Ms. Franklin's performance. *See* **Exhibit 4** (Declaration of Rhonda Jacobs-Sturges of 8/24/2011).

9. Ms. Franklin previously had to sue Mr. Elliot in 2011 in the Central District of California to stop him from releasing his film. The lawsuit was resolved after Elliot agreed to not release the film.

10. Elliot has now apparently decided to work through the Telluride Film Festival to publicly release and display the concert footage without Ms. Franklin's consent, in violation of her contractual, federal statutory and common law rights.

11. Immediate court intervention is required to stop this violation of Ms. Franklin's rights. Ms. Franklin is entitled to, and respectfully prays for an emergency order from the Court to enjoin the Telluride Film Festival from publicly showing this film as scheduled on the evening of September 4, 5, and 6 2015.

## II. THE PARTIES

12. Aretha Franklin is a legendary vocalist and artist of international renown. She has won eighteen Grammy Awards and has been named the ninth greatest singer of all time by Rolling Stone Magazine. She is a citizen of Detroit, Michigan.

13. Defendant The National Film Preserve, Ltd. (the Telluride Film Festival) is a Colorado 501(c)(2) non-profit tax-exempt educational corporation, with its principal place of business in California.

## III. JURISDICTION

14. There is well in excess of $100,000 in controversy, as the rights to Ms. Franklin's name and likeness are worth millions of dollars.

15. This court has jurisdiction based on federal question jurisdiction under 28 U.S.C. §1331 because this complaint alleges a violation of the federal anti-bootlegging statute – 17 U.S.C. §1101 (1).

16. The court also has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. 1332(a)(1).

## IV. ADDITIONAL FACTUAL ALLEGATIONS INCORPORATED BY REFERENCE TO PRIOR LAWSUIT AND PRIOR MOTION FOR EMERGENCY INJUNCTIVE RELIEF.

17. For the sake of brevity, and because other than the involvement of the Telluride Film Festival, none of the facts have materially changed since 2011 (the last time Ms. Franklin had to sue to protect her contractual rights, her intellectual property rights and rights to her name and likeness), Ms. Franklin incorporates by reference the factual recitations from the Complaint

attached as **Exhibit 5** (Verified Complaint in *Franklin v. Elliot*, 2:11-cv-07225-PA-JEM, Central District of California).

18.     In that case, after failed negotiations with Ms. Franklin, Mr. Elliot was preparing to publicly release the film Amazing Grace without Ms. Franklin's consent.

19.     The case was resolved after Mr. Elliot professed to having no intent to proceed with the public commercial release of the film.  *See* **Exhibit 6** (Answer of Alan Elliot at ¶27 -- denial "to the extent that it alleges that Defendants are proceeding with the release of the unauthorized film 'Amazing Grace'.")

20.     The unauthorized showing of the 1972 concert footage constitutes an invasion of privacy, and exploitation and misappropriation of Ms. Franklin's name and likeness for commercial purposes in violation of California and common law.

21.     Ms. Franklin further incorporates the factual allegations and exhibits found in the Ex Parte application for Preliminary Injunction and Associated Exhibits filed on August 31, 2011 in the matter of *Franklin v. Elliott*, 2:11-cv-07225-PA-JEM, attached as **Exhibit 7.**

## COUNT ONE:
## EMERGENCY RESTRAINING ORDER AND TEMPORARY INJUNCTION

22.     Plaintiff adopts by reference the prior allegations.

23.     Plaintiff seeks to enjoin the Defendant from infringing upon her right of publicity by proceeding with the release of the unauthorized film "Amazing Grace."

24.     Indeed "the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits."

25.     As is demonstrated in the accompanying brief, Ms. Franklin has a high probability of success and will be irreparably injured if an injunction is not released.

26. The raw footage has been locked away in the vaults of Warner Brother studios for nearly forty years. There is no urgency in its immediate release. Conversely, Ms. Franklin will be irreparably injured if the film is released.

27. In this instance, "the status quo is the last uncontested status which preceded the pending controversy." Id. Plaintiff therefore seeks to enjoin Defendant from releasing any film, documentary, movie or concert footage which involves Plaintiff's 1972 performance at the New Missionary Baptist Church in Los Angeles California.

28. Plaintiff can and will demonstrate the likelihood that she will prevail on her claim for violation of rights of publicity against Defendant. Plaintiff also faces irreparable harm unless the Defendant is immediately restrained from engaging in the infringing conduct. Additionally, serious questions are raised and the balance of hardships tips in Plaintiff's favor. Plaintiff therefore respectfully requests that her Motion for Preliminary Injunction be granted.

WHEREFORE, Ms. Franklin requests this Court grant a temporary and permanent restraining order barring the release of this film.

## COUNT TWO: VIOLATION OF COMMON RIGHT TO PUBLICITY
## (STATE LAW COUNT)

29. Plaintiff adopts by reference all prior allegations.

30. California's law regarding the Right to Publicity is governed by its common law and statutory laws which protect the use of a person's "name, voice ... or likeness" Cal. Civ. Code § 3344(a). Plaintiff can effectively show an exceedingly high probability of success on her Right of Publicity claim.

31. California common law recognizes this right of publicity in a person's name, likeness and identity. Colorado similarly recognizes the rights of publicity in a person's name,

likeness and identity, and the misappropriation of such is a tort. *Joe Dickerson & Associates v. Dittmar*, 34 P.3d 995 (Colo. 2001).

32. There is no question that the Defendant, by publicly displaying this film, is using the Plaintiff's identity or likeness.

33. Not only is the Plaintiffs identity used in the film which is being released without authorization, but it was also used in promotional materials as well.

34. Equally evident is the fact that the Defendant film festival will continue to be advantaged from the appropriation, or more accurately, the misappropriation of the Defendant's name or likeness.

35. Additionally, the advantages that the Defendant has gained and continues to gain exceed those strictly economic in nature and include the commercial advantages of enhancing the defendant's professional repute and industry clout which in turn leads to further commercial opportunities and reputational gain for the film festival.

36. For these reasons, the defendant is benefiting from the misappropriation of the Plaintiff's name and likeness in directly economic way, indirectly economic ways as well as in ways not limited to economics at all.

37. Defendant never obtained the Plaintiff's consent to release the movie.

38. Use of this footage without Ms. Franklin's consent would violate the Plaintiff's rights of publicity.

WHEREFORE, Ms. Franklin requests this Court grant her the injunctive relief prayed for above together with just and equitable damages in excess of $75,000 including her attorney fees

and costs. Plaintiff also requests this Court award punitive and exemplary damages designed to deter similar future misconduct by others.

### COUNT THREE: ANTI-BOOTLEGGING CLAIM
### (FEDERAL QUESTION JURISDICTION)

39. Ms. Franklin adopts the prior paragraphs.

40. 17 U.S.C. Sec. 11011(l) provides in pertinent part:

(a) Unauthorized Acts.--Anyone who, without the consent of the performer or performers involved—

(1) fixes the sounds or sounds and images of a live musical performance in a copy or phonorecord, or reproduces copies or phonorecords of such a performance from an unauthorized fixation,

(2) transmits or otherwise communicates to the public the sounds or sounds and images of a live musical performance, or

(3) distributes or offers to distribute, sells or offers to sell, rents or offers to rent, or traffics in any copy or phono record fixed as described in paragraph (1), regardless of whether the fixations occurred in the United States, shall be subject to the remedies provided in sections 502 through 505, to the same extent as an infringer of copyright .

41. Ms. Franklin is the performer of the video in question.

42. Defendant intends to release or distribute large portions of the content of the video without her consent.

43. The video in question includes both sounds and images.

44. Defendant wishes to release the film and video of Plaintiff's performance commercially to the public at large.

45. Defendant is therefore in violation of the foregoing statute.

46. Ms. Franklin will be affirmatively harmed if this video is released.

47.     Ms. Franklin has no other recourse other than an application for relief to this Court.

WHEREFORE, Ms. Franklin requests this Court grant her the injunctive relief prayed for above together with just and equitable damages in excess of $75,000 including her attorney fees and costs.  Plaintiff also requests this Court award punitive and exemplary damages designed to deter similar future misconduct by others.

### COUNT FOUR:  VIOLATION OF RIGHT OF PUBLICITY
### (STATE LAW COUNT)

48.     Plaintiff adopts by reference the prior allegations.

49.     Several courts have held that a celebrity's property  interest in his or her name and likeness is unique, and cannot reasonably be compensated by money damages.

50.     Thus Defendant's unauthorized use of Plaintiff's name, voice and likeness is per se causing irreparable harm.

51.     Additionally, Defendant's disregard to Plaintiffs rights of publicity and insistence on releasing a movie without authorization undermine the value of a celebrity's property interest in his or her name or likeness.

52.     The market for the publicity rights would collapse and the rights themselves would be rendered valueless without the ability of the law to adequately protect them through injunctions.

53.     Punishing violations of publicity rights after the fact through damages cannot effectively enforce the law in this respect to the same degree that issuing an injunction can and often does.

54. By releasing *Amazing Grace* without authorization and using it for commercial purposes, the Defendant film festival will get publicity for itself, in a value that exceeds $75,000.00.

55. WHEREFORE, Ms. Franklin requests this Court grant her the injunctive relief prayed for above together with just and equitable damages in excess of $75,000 including her attorney fees and costs.  Plaintiff also requests this Court award punitive and exemplary damages designed to deter similar future misconduct by others.

Dated:  September 4, 2015                                  Respectfully submitted,

*s/ N. Reid Neureiter*
N. Reid Neureiter
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:   303.244.1800
Facsimile:     303.244.1879
Email:   neureiter@wtotrial.com

Attorneys for Plaintiff,
Aretha Franklin